[Cite as *In re Patricy*, 2011-Ohio-4351.]



# Court of Claims of Ohio
## Victims of Crime Division

The Ohio Judicial Center
65 South Front Street, Fourth Floor
Columbus, OH 43215
614.387.9860 or 1.800.824.8263

IN RE: HENRY R. PATRICY, II

DAVID PATRICY

ESTATE OF OLIVIA PATRICY

GINNYNE T. PATRICY

PRISCILLA PATRICY

      Applicants
 Case No. V2010-50485

Commissioners:
Gregory P. Barwell, Presiding
Elizabeth Luper Schuster

## ORDER OF A TWO COMMISSIONER PANEL

{1}On March 11, 2008, the applicant, Ginnyne Patricy, filed a compensation application as the result of the death of Henry Patricy, II. On September 4, 2008, the Attorney General issued a finding of fact and decision denying the applicant's claim for failure to prove she incurred economic loss. On June 18, 2009, the above listed applicants filed a supplemental compensation application. On February 16, 2010, the Attorney General found the decedent qualified as a victim of criminally injurious conduct. Accordingly, an award of reparations was granted to the Estate of Olivia Patricy in the amount of $6,548.58, and an award of $7,500.00, (the maximum funeral expense reimbursement) was granted to applicants, Ginnyne Patricy and David Patricy. The award of funeral expense reimbursement was apportioned as follows: Ginnyne Patricy $7,387.50 and David Patricy $112.50.

{2}The applicant's request for family counseling was denied since this expense had already been reimbursed by the Florida Crime Victims Compensation Program, a readily available collateral source.

{3}On February 25, 2010, the applicants submitted a request for reconsideration disputing the calculations of dependent's economic loss and dependent's replacement services loss. On April 27, 2010, the Attorney General rendered a Final Decision. Based upon further investigation, the Attorney General recalculated the award for dependent's economic loss for the Estate of Olivia Patricy to $7,037.76. On May 13, 2010, the applicant filed a notice of appeal from the April 27, 2010 Final Decision of the Attorney General.

{4}Hence, a hearing was held before this panel of commissioners on October 20, 2010 at 12:00 P.M.

{5}The applicant, Ginnyne Patricy, and her attorney, Michael Falleur, appeared at the hearing, while the state of Ohio was represented by Assistant Attorney General Heidi James.

{6}The applicant framed the issues as whether a memorial fund created as a result of the death of Henry Patricy, II should be considered a collateral source and whether the calculation of dependent's economic loss based on Mr. Patricy's projected work life ending at age 62 accurately reflects his working history.

{7}The Attorney General asserted the memorial fund qualified as a collateral source pursuant to R.C. 2743.60(D). The Attorney General relied on the specific language in R.C. 2743.60(D) as it relates to economic loss being recouped from other persons. Furthermore, the Attorney General assered this result is supported by the judicial holding in *In re Martin* (1993), 63 Ohio Misc. 2d 131, which held that benefits received from whatever source, after the criminally injurious conduct, that were not received prior to the incident should be deemed a collateral source. Secondly, the Attorney General used the age 62 based upon the Markoff model. The Attorney General argued this model has been used since the beginning of the program and

treats all applicants the same in that the model considers the retirement age of all workers throughout the United States and is not speculative, as the applicants' allegation concerning the working life of the decedent would be.

{8}The applicant called Robert Patricy, the younger brother of the decedent to testify. Mr. Patricy related that his brother was an inventor who formed the company Hank International. Henry invented products for boats and traveled throughout the country to a variety of trade shows. He testified that his brother would have no desire to retire from a business that he loved and that he would not have retired at age 62. There was no cross-examination and Robert Patricy's testimony was concluded.

{9}Ginnyne Patricy then testified. Ms. Patricy described her husband's work history, asserting he had never discussed retirement with her. Ms. Patricy also stated that the memorial fund was established by their church and the donations were anonymous. There was no cross-examination and Ginnyne Patricy's testimony was concluded.

{10}The Attorney General called William Fulcher, Assistant Section Chief of the Crime Victims Section. Mr. Fulcher related that he was familiar with the Markoff model of life expectancy. The model is used by economists to determine an individual's working lifetime. This model is the most widely used model by economists in the United States and was last updated in 1997-1998. The Markoff model uses data gathered by the Department of Labor and this model has been approved by the Court of Claims in the past.

{11}In calculating the dependent's economic loss in this case, the decedent's income for five years was averaged and it was determined the applicant earned a net of $256.19 per week.

{12}Upon cross-examination, Mr. Fulcher indicated that the model calculates the remaining working years of a person's life at the time of their death. Accordingly, since the decedent died at the age of 47 the model calculated that he would retire at age 62. Mr. Fulcher testified that the model should prevail over actual evidence

submitted in a case. Mr. Fulcher conceded that a person born in 1960, the same year the decedent was born, would reach full retirement at age 67 pursuant to data supplied by the Social Security Administration. Whereupon the testimony of Mr. Fulcher was concluded.

{13}In conclusion, the applicant stated the Markoff model should not be used if evidence presented at the hearing gives a more accurate reflection of an individual's future working plans. The applicant suggests that either the age of full retirement as relied on by the Social Security Administration, 67 or the date when Mr. Patricy's mortgage was expected to be paid off, 70 should be used to calculate dependent's economic loss.

{14}Finally, the applicant contends that *In re Martin* should not be controlling with respect to the memorial fund. In *Martin*, a judge of the Court of Claims found that retirement benefits, i.e., social security disability, workers compensation, welfare, aid to dependent children and food stamps among others should be used to offset lost wages if these benefits were received after the criminally injurious conduct. Applicant contended those collateral source benefits were all included in the statutory definition of collateral sources contained in R.C. 2743.51(B). However, the memorial fund in question consists of gifts made by anonymous donors with no specific designation of how the money should be used. Accordingly, the applicant contends the memorial fund should not be considered a collateral source.

{15}The Attorney General argued that the Markoff model is the best evidence. The Attorney General asserted information presented by the applicant is speculative, whereas the Markoff model treats all individuals the same.

{16}The Attorney General believes the memorial fund falls into the parameters of R.C. 2743.60(D) "recouped from others persons." If the memorial fund was not considered a collateral source it would constitute a windfall to the applicant and the dependents. Furthermore, the memorial fund was set up without a specific purpose so

this money could be used for the family's needs in their time of loss.  This is analogous to dependent's economic loss, money the family uses for whatever purpose to assist them in their time of need.  The Attorney General asserts that *Martin* should be controlling and the memorial fund should be considered a collateral source pursuant to R.C. 2743.60(D).  Whereupon, the hearing was concluded.

{17}R.C. 2743.51(B) states:

"(B) Collateral source means a source of benefits or advantages for economic loss otherwise reparable that the victim or claimant has received, or that is readily available to the victim or claimant, from any of the following sources:

"(1) The offender;

"(2) The government of the United States or any of its agencies, a state or any of its political subdivisions, or an instrumentality of two or more states, unless the law providing for the benefits or advantages makes them excess or secondary to benefits under sections 2743.51 to 2743.72 of the Revised Code;

"(3) Social security, medicare, and medicaid;

"(4) State-required, temporary, nonoccupational disability insurance;

"(5) Workers' compensation;

"(6) Wage continuation programs of any employer;

"(7) Proceeds of a contract of insurance payable to the victim for loss that the victim sustained because of the criminally injurious conduct;

"(8) A contract providing prepaid hospital and other health care services, or benefits for disability;

"(9) That portion of the proceeds of all contracts of insurance payable to the claimant on account of the death of the victim that exceeds fifty thousand dollars;

"(10) Any compensation recovered or recoverable under the laws of another state, district, territory, or foreign country because the victim was the victim of an offense committed in that state, district, territory, or country.

{18}"'Collateral source' does not include any money, or the monetary value of any property, that is subject to sections 2969.01 to 2969.06 of the Revised Code or that is received as a benefit from the Ohio public safety officers death benefit fund created by section 742.62 of the Revised Code."

{19}R.C. 2743.51(I) states in pertinent part:

"(I) 'Dependent's economic loss' means loss after a victim's death of contributions of things of economic value to the victim's dependents, not including services they would have received from the victim if the victim had not suffered the fatal injury, less expenses of the dependents avoided by reason of the victim's death."

{20}R.C. 2743.60(D) in pertinent part states:

"(D) The attorney general, a panel of commissioners, or a judge of the court of claims shall reduce an award of reparations or deny a claim for an award of reparations that is otherwise payable to a claimant to the extent that the economic loss upon which the claim is based is recouped from other persons, including collateral sources."

{21}"When the victim or applicant receives benefits from whatever source, after the criminally injurious conduct, that they were not receiving prior to the incident, the receipt of those benefits offsets lost wages and are deemed collateral sources. This would include, but is not limited to, Social Security disability, worker's compensation, welfare, aid to dependent children and food stamps." *In re Martin* (1993), 63 Ohio Misc. 2d 82.

{22}From review of the case file and with full and careful consideration given to the testimony of witnesses and the arguments of the parties, we find that the memorial fund does not constitute a collateral source or recoupment from other persons as defined in R.C. 2743.60(D). We believe the case at bar can be distinguished from the holding in *Martin*. *Martin* involved a situation where an individual was injured and

sustained work loss. The applicant argued the food stamps he received after his injury should not qualify as a collateral source. However, the judge rejected that argument citing R.C. 2743.51(B) and finding benefits or advantages received from any collateral source listed in this statutory section should offset any economic loss sustained even if they were received after the occurrence of the criminally injurious conduct.

{23}In this situation, the memorial fund does not fall under any statutory provision contained in R.C. 2743.51(B). The fund was established for a variety of reasons based upon the feelings of the anonymous donors. The fund was not earmarked for a specific purpose and due to its anonymous nature the thoughts and desires of the donors will never be known. Furthermore, we cannot find that the memorial fund was a recoupment from other persons as is required by R.C. 2743.60(D). Black's Law Dictionary defines recoupment as "the recovery or regaining of something." Proceeds from the memorial fund do not meet this definition. A judge in *In re Norek*, V85-51799jud (5-5-87) held that recovery received from a negligent third party, not the offender, whose actions or inactions contributed to the criminally injurious conduct is a recoupment from other persons and will reduce an award of reparations. Informal donations are not included under the statutory definition of collateral sources.

{24}Finally, R.C. 2743.51(I) defines dependent's economic loss as a loss after the victim's death of contributions of things of economic value to the victim's dependents. This statutory section has always been interpreted to focus on the loss of things of economic value which the victim was contributing to his family prior to his death. For us to consider the memorial fund an offset against the decedent's lost wages we would have to conclude that the memorial fund fit the definition of a collateral source contained in R.C. 2743.51(B), which it clearly does not.

{25}Therefore, we find the memorial fund is not a collateral source pursuant to R.C. 2743.51(B) or a recoupment from other persons pursuant to R.C. 2743.60(D), and accordingly, this case should be remanded to the Attorney General for recalculation of dependent's economic loss.

{26}It is our understanding by the arguments presented by the parties that if the memorial fund does not offset the loss of the decedent's contribution of things of economic value, the maximum award will be reached.   Accordingly, we need not reach the issue of the appropriateness of the Markoff model.   We believe the Markoff model presents a solid foundation for calculating a decedent's working lifetime.   However, we would never discourage a party to present evidence which might alter or affect the conclusions reached by the Markoff model.

{27}Therefore, April 27, 2010 decision of the Attorney General is modified.

IT IS THEREFORE ORDERED THAT

{28}1)  The April 27, 2010 decision of the Attorney General is MODIFIED to render an additional judgment in favor of the applicants and dependents;

{29}2)  This claim is remanded to the Attorney General for recalculation of dependent's economic loss in accordance with this decision and payment of the recalculated amount;

{30}3)  In the event the recalculated award does not reach the maximum award pursuant to R.C. 2743.50(I), this order is entered without prejudice to the applicants' right to file a supplemental compensation application, within five years of this order, pursuant to R.C. 2743.68;

{31}4)  Costs are assumed by the court of claims victims of crime fund.

_____
GREGORY P. BARWELL
Presiding Commissioner


_____
ELIZABETH LUPER SCHUSTER
Commissioner

ID #I:\Victim Decisions to SC Reporter\Panel Decisions\2011\March 2011\V2010-50485 Patricy.wpd\DRB-tad

A copy of the foregoing was personally served upon the Attorney General and sent by regular mail to Lake County Prosecuting Attorney and to:

Filed 5-6-11
Jr. Vol. 2278, Pgs. 104-113
Sent to S.C. Reporter 8-30-11